UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| CLEARWATER REI, LLC, an Idaho limited liability company, | NO. CIV. 1:10-448 WBS |
| Plaintiff, | <u>MEMORANDUM AND ORDER RE:<br>MOTIONS FOR SUMMARY JUDGMENT</u> |
| v. | |
| FOCUS CONSULTING ADVISORS, LLC, an Arizona limited liability company, | |
| Defendant. | |

----oo0oo----

Plaintiff Clearwater REI, LLC, brought this action against defendant Focus Consulting Advisors, LLC, seeking declaratory judgment regarding the amount of payment due under a contract between the parties. Defendant now moves for summary judgment, arguing that the court lacks personal jurisdiction and that the action is barred by the Statute of Frauds. Plaintiff also moves for summary judgment on its claim.

///

///

1

I.  <u>Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

II. Relevant Facts

Daniel Welker, then an employee of plaintiff, first became acquainted with Matthew Lyons in 2008. (Welker Aff. in Resp. to Def.'s Mot. for Summ. J. ("Welker Aff. II") ¶ 2 (Docket No. 20-1).) Welker indicated to Lyons that plaintiff was interested in purchasing distressed notes. (Id. ¶ 3.) Lyons responded that he was "putting together a group" that could help with such purchases. (Id. ¶ 4.) Lyons then created that group, defendant in this suit, consisting of himself and two other members: Thomas Driessen and Joseph Driessen. (Id. ¶ 5; Thomas Driessen Decl. in Supp. of Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 2 (Docket No. 21-1).) Lyons asked Welker whether plaintiff would be interested in using defendant's services to review and potentially acquire certain distressed notes in a portfolio offered by defendant. (Welker Aff. II ¶ 5.) The parties then negotiated, via e-mail and phone, and executed a Consulting Agreement. (Id. ¶ 6; see Def.'s Separate Statement of Facts in Supp. of its Mot. for Summ. J. Ex. A ("Consulting Agreement") (Docket No. 16-2).)

The Consulting Agreement was executed on May 15, 2009, between plaintiff ("Client"), defendant ("Consultant"), and

Mobey, LLC ("Mobey").[1]  (Consulting Agreement at 1.)  The Consulting Agreement provides that:

> Client hereby engages Consultant to provide advisory services to Client in connection with Client's possible purchase of one or more Loans described in the Portfolio Notice, including introductions to the Lender and/or the lender's representative, notifying Client of opportunities to purchase Loans, assistance with due diligence and related advisory services. Client hereby engages Mobey as Client's sole and exclusive agent for the purchase of Properties described in the Portfolio Notice.

(Id.)

The Consulting Agreement sets a term of engagement of four months, with non-circumvention obligations continuing for another six months. (Id. at 1, 4.) Compensation to defendant and Mobey is set by a fee schedule based on the purchase price of the loan or property purchased, due at the closing of the purchase. (Id. at 2.) Untimely payments are set to accrue interest at the rate of eight percent annually. (Id.)

The Consulting Agreement also includes a choice of law provision and forum selection clause:

> This Agreement will be interpreted and construed exclusively in accordance with the laws of the State of Arizona without regard to its choice of law principles. The parties further agree that proper and exclusive venue for any dispute arising in connection with this Agreement will be the federal or state courts located in Maricopa County, Arizona.[2]

---

[1] Mobey is not a party to this suit. It is unclear whether Mobey acted as an agent or played any role in the events at issue.

[2] The parties agree that the forum selection clause is not enforceable under Idaho law but that the choice of law provision applies. See Cerami-Kote, Inc. v. Energywave Corp., 116 Idaho 56, 58-59 (1989); (see Def.'s Mem. in Supp. of Mot. for Summ. J. at 2:14-15, 5:11-13 (Docket No. 16).)

4

(Id. at 4-5.)

In June of 2009, plaintiff began bidding to purchase a note secured by real property known as the "Trail Walk Condominiums" in Kenmore, Washington. (Welker Aff. in Supp. of Mot. for Summ. J. ("Welker Aff. I") ¶ 2 (Docket No. 17-2); Lyons Decl. in Supp. of Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 4 (Docket No. 21-1).) During the bidding process, the price on the note became too competitive, and Welker requested that defendant take a reduced commission in order to help plaintiff purchase the note. (Welker Aff. I ¶ 2.) The parties dispute whether they ever agreed to a reduced commission; plaintiff represents that Lyons agreed to a reduced fee of $10,000.00. (Id. ¶ 4.) Plaintiff then placed a final bid and successfully purchased the Trail Walk note on June 29, 2009. (Id. ¶ 6; Lyons Decl. ¶ 12.)

On September 4, 2009, Lyons sent plaintiff a letter offering to accept $10,000.00 in full satisfaction of plaintiff's obligations relating to the Trail Walk note if payment was received by September 25, 2009. (Def.'s Separate Statement of Facts in Supp. of its Mot. for Summ. J. Ex. C.) Based on the fee schedule in the Consulting Agreement, the fee for the Trail Walk note would otherwise have been $171,240.00. (Id. Ex. B.) Plaintiff did not make a payment by September 25. (Lyons Decl. ¶ 17.) On October 12, 2009, Lyons sent Welker an e-mail informing him that the deadline to pay had expired. (Id. ¶ 18.)

Plaintiff then filed suit in Ada County Court on July 21, 2010, which was removed to this court on September 2, 2010. Plaintiff seeks declaratory judgment that it owes only $10,000.00 to defendant.

After plaintiff filed this action, defendant filed an action against plaintiff in the District of Arizona, which was dismissed in deference to the instant action based solely on the first-to-file rule. (Def.'s Separate Statement of Facts in Supp. of Mot. for Summ. J. ¶ 6 (Docket No. 16-2).)

III. Discussion

A plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (citing Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984)).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Dow Chem. Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994)). Idaho's long-arm statute is "intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." Doggett v. Elecs. Corp. of Am., Combustion Control Div., 93 Idaho 26, 30 (1969). Therefore, the remaining issue is whether the court's exercise of personal jurisdiction over defendant comports with federal due process. See Calderon, 422 F.3d at 831.

For a court to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional

notions of fair play and substantial justice.'" Schwarzenneger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A district court may exercise either general or specific jurisdiction over a non-resident defendant. Id. at 801-02. Plaintiff does not contend that the court has general jurisdiction; only specific jurisdiction is at issue.

The Ninth Circuit applies a three-part test to determine whether the exercise of specific personal jurisdiction is proper:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Id. at 802 (internal quotation marks omitted) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. (citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007) (quoting Schwarzenegger, 374 F.3d at 802).

Either purposeful availment of the forum or the

7

purposeful direction of activities towards the forum can satisfy the first prong. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Schwarzenegger, 374 F.3d at 802 (citation omitted). Here, the action sounds in contract. Furthermore, plaintiff does not argue that defendant directed any of its activities toward, or consummated any transactions in, Idaho. Accordingly, the court will apply the purposeful availment analysis.

At its base, the purposeful availment requirement seeks to ensure that a defendant is not haled into court for contacts that are random, fortuitous, or attenuated. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). It focuses on a defendant's own actions that create a connection with the forum. Id. To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)). In this way, a defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In exchange for the forum state's benefits and protections, the defendant must submit to the burden of litigation in the forum state. Burger King, 471 U.S. at 476.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state

typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802. However, "[c]onsistent with the Supreme Court's holding in Burger King, merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." Ziegler v. Indian River Cnty., 64 F.3d 470, 473 (9th Cir. 1995). Whether a contract signifies purposeful availment depends upon a number of additional factors, which include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479.

Here, the only potential basis for jurisdiction over defendant is the Consulting Agreement between the parties. The Supreme Court has emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473 (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)). "Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." Id.

However, when a plaintiff solicits a defendant to enter

into a contract, the defendant is not normally considered to have availed itself of the laws of the plaintiff's state. See, e.g., Sher, 911 F.2d at 1363 ("Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state."); Advance Fin. Res., Inc. v. Cottage Health Sys., Inc., No. CV 08-1084, 2009 WL 1080547, at *4, 6 (D. Or. Apr. 21, 2009) (finding no personal jurisdiction over defendant after considering, inter alia, that plaintiff initiated contract discussions and defendant did not benefit from the fact that plaintiff happened to reside in Oregon).

Even taking the facts in the light most favorable to plaintiff, defendant cannot be said to have initiated the parties' contract discussions. It was an employee of plaintiff who first informed Lyons, one of the members of defendant, that plaintiff was looking for a consultant; in response, defendant then offered its services to plaintiff. Plaintiff attempts to characterize the transaction as part of a larger, ongoing relationship between the parties. However, plaintiff still fails to show that defendant reached out first. At best, the interaction could be described as mutual solicitation. Even if Lyons reached out to plaintiff by explaining that he had formed a company that could serve plaintiff's previously-expressed needs, such behavior falls short of the sort of solicitation that would serve as a basis for finding that a defendant purposefully availed itself of the forum state's laws.

Plaintiff has presented no other facts that could support a finding of purposeful availment. There is no evidence that any representative of defendant ever traveled to Idaho. The parties only communicated via telephone and e-mail, which is insufficient to establish purposeful availment. See Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) ("[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'") (quoting Thos P. Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1254 (9th Cir. 1980)) (second alteration in original).

Furthermore, the Consulting Agreement required defendant to perform services in Arizona, not Idaho. Plaintiff has not presented any evidence that defendant could benefit from the fact that plaintiff resides in Idaho. In a number of cases with facts similar to these, courts have declined to find purposeful availment. See Sher, 911 F.2d at 1360, 1366 (where plaintiff in California solicited Florida attorneys to represent him in Florida and one attorney traveled to California on three occasions to prepare the case, the individual attorneys had not purposefully availed themselves of California law); Carreras v. PMG Collins, LLC, 741 F. Supp. 2d 375, 382-83, 385-86 (D.P.R. 2010) (where defendants in Florida contacted plaintiffs in Puerto Rico regarding property, plaintiffs signed purchase agreements to buy property in Florida from defendants, and Florida law governed the agreements, defendants could not have reasonably anticipated being subject to suit in Puerto Rico); Advance Fin. Res., Inc.,

2009 WL 1080547, at *4-6 (where plaintiff in Oregon initiated contact with defendant in California, the parties contacted each other via telephone, e-mail, and fascimile, no representatives of defendant traveled to Oregon, plaintiff carried out its obligations in Oregon and defendant carried out its obligations in California, and California law governed the contract, no purposeful availment found); Inamar Inv., Inc. v. Lodge Props., Inc., 737 F. Supp. 12, 12-14 (D.P.R. 1990) (where defendant, a condominium manager in Colorado, mailed rental agreement to plaintiff, a corporate citizen of Puerto Rico that owned an interest in the condominium, plaintiff signed agreement, the parties corresponded via letters, material performance of the contract occurred in Colorado, and Colorado law governed the contract, defendant never purposefully availed itself of the benefits and protections of Puerto Rico law).

Additionally, the fact that the parties expressly agreed that Arizona law governed the Consulting Agreement is an important factor in determining whether defendant purposefully availed itself of the benefits and protections of Idaho law. Advance Fin. Res., Inc., 2009 WL 1080547, at *4; see Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1069 (5th Cir. 1992) (noting that choice of law provision designating non-forum state's laws "indicate[d] rather forcefully" that the defendant "did not purposely direct its activities toward" the forum); Nanoexa Corp. v. Univ. of Chicago, No. 10-CV-2631, 2010 WL 4236855, at *5 (N.D. Cal. Oct. 21, 2010) ("[Defendant] received no benefit, privilege, or protection from California, as the parties agreed to an Illinois choice of law provision in the

12

License Agreement."). If defendant intended to avail itself of the protections of Idaho law, it presumably would not have negotiated to include the Arizona choice-of-law provision and forum selection clause in the Consulting Agreement. That defendant specifically sought the application of Arizona law strongly indicates that it did not purposefully avail itself of Idaho law. Accordingly, plaintiff has not demonstrated that defendant purposefully availed itself of the privilege of conducting activities in Idaho, thereby invoking the benefits and protections of its laws.[3]

Given that plaintiff cannot establish the first prong of the test for specific personal jurisdiction, the court need not proceed to the remaining inquiries under the Ninth Circuit's test. See Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."). Plaintiff has thus failed to demonstrate that the court has specific personal jurisdiction over defendant.

Pursuant to 28 U.S.C. § 1631, if a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in которых the action . . . could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631; see Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990). The

---

[3] Defendant has requested an evidentiary hearing in the event that the court should find that there are questions of fact; plaintiff has not made such a request. An evidentiary hearing is not necessary given that, even taking the facts in the light most favorable to plaintiff, plaintiff has not demonstrated an issue of fact as to defendant's purposeful availment.

13

court can find no reason that this action could not have been brought in the District of Arizona.

Dismissing this action and requiring the parties to file a new action in Arizona would waste both the parties' and the court's resources. "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" Miller, 905 F.2d at 262 (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)). Defendant previously filed an action against plaintiff in the District of Arizona, which was dismissed in deference to the instant action solely on the ground that this action was first-filed. (Def.'s Separate Statement of Facts in Supp. of Mot. for Summ. J. ¶ 6.) Accordingly, the court finds that transfer to the District of Arizona would be in the interest of justice.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion for summary judgment be, and the same hereby is, GRANTED on the ground that this court lacks personal jurisdiction over defendant and DENIED as moot in all other respects;

(2) Plaintiff's motion for summary judgment be, and the same hereby is, DENIED as moot; and

(3) This action is hereby ordered TRANSFERRED to the United States District Court for the District of Arizona.

DATED: July 22, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14